IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ILLINOIS

ZURICH AMERICAN INS. CO., a/s/o Everest Holdings, LLC, successor to Eddie Bauer Fulfillment Services, Inc.,

Zurich,

vs.

Case No: 12-cv-0635-MJR-PMF

LCG LOGISTICS, LLC, UNIVERSAL CARRIERS, INC., SILVIA CEJA (d/b/a Nieto's Transport), and TRUCK CENTERS INC.,

Defendants.

MEMORANDUM AND ORDER

REAGAN, District Judge:

## A. Introduction and Factual Summary

Filed in this United States District Court, the above-captioned case involves Zurich American Insurance Company (Zurich) suing as the subrogated insurer of Everest Holdings, LLC, successor to Eddie Bauer Fulfillment Services, Inc. (Eddie Bauer). The suit seeks recovery of the $259,634.00 which Zurich paid for 1,625 cartons of apparel (blue jeans) shipped from Texas to Ohio that were lost or stolen somewhere in Southern Illinois.

Zurich's original (May 2012) complaint named three Defendants: (1) LCG, Logistics, LLC (**LCG**); (2) Universal Carriers, Inc. (**Universal**); and Silvia Ceja doing business as Nieto's Transport (**Nieto**). The essence of Zurich's original complaint is as follows.

LCG, a freight broker, contracted with Eddie Bauer to transport a shipment of jeans by motor carrier. The contract required LCG to maintain cargo liability insurance of no less than $250,000 per vehicle. The contract provided that LCG would be liable for the "full actual loss"

resulting from any damage, injury, or delay in the shipment. Unbeknownst to Eddie Bauer, LCG retained Universal to receive the shipment in Laredo, Texas and deliver it to Eddie Bauer's Groveport, Ohio facility. Universal received the shipment in good condition, but LCG and/or Universal failed to deliver the shipment to Eddie Bauer in Ohio. The tractor unit being driven by Universal's agent broke down in Southern Illinois and was taken for repairs to Truck Centers, Inc. (TCI)'s shop in Mt. Vernon, Illinois. Nieto took custody and control of the container at that point, after which unknown persons removed the container from TCI's facility. Defendants' failure to deliver the shipment to Eddie Bauer required Zurich to pay $259,634 under an insurance policy Zurich issued to Everest (successor to Eddie Bauer).[1]

On October 5, 2012, **LCG filed a third-party complaint against TCI**. LCG alleged that TCI assumed the care, custody and control of the shipment as a bailee, that TCI breached its duty of care to keep the shipment safe, that TCI's breach caused LCG's customer (Eddie Bauer) to sustain loss, and that LCG now may be held liable for the lost value of the Eddie Bauer shipment. *See* Doc. 22. Count I of the third-party complaint alleges breach of bailment. Count II alleges an indemnity claim (i.e., if LCG is found liable to Zurich, then LCG is entitled to indemnification from TCI for any losses).

After LCG filed the third-party complaint against TCI, Zurich amended its complaint to name TCI as a direct Defendant. The motion now before this Court is directed at LCG's third-party complaint. Specifically, on December 3, 2012, TCI moved to dismiss Count II of LCG's third-party complaint (the indemnity count) for failure to state a claim or, alternatively, to strike the portions of the third-party complaint relating to the indemnity claim. TCI's motion ripened

[1] Zurich's complaint presented these allegations as a claim for breach of contract (against LCG), a claim for breach of bailment (against Nieto), and claims under the Carmack Amendment, 49 U.S.C. 14706 (against LCG, Universal and Nieto).

with the filing of LCG's response on January 7, 2013. For the reasons stated below, the Court partially grants and partially denies TCI's motion.

**B. <u>Applicable Legal Standards</u>**

TCI seeks to *dismiss* LCG's claim for indemnity under Federal Rule of Civil Procedure 12(b)(6) or to *strike* portions of the third-party complaint under Federal Rule of Civil Procedure 12(f). Analysis begins with the standards of review governing motions to dismiss and strike.

In deciding a motion to dismiss for failure to state a claim on which relief can be granted under Rule 12(b)(6), the district court's task is to determine whether the complaint includes "enough facts to state a claim to relief that is plausible on its face." ***Khorrami v. Rolince*, 539 F.3d 782, 788 (7th Cir. 2008), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).** As the Court of Appeals for the Seventh Circuit has clarified: "Even after *Twombly*, courts must still approach motions under Rule 12(b)(6) by 'construing the complaint in the light most favorable to the Zurich, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor.'" ***Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009), *cert. denied*, 130 S. Ct. 1141 (2010), *quoting Tamayo v. Blagoyevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).**

Legal conclusions and conclusory allegations that merely recite the elements of a claim are not entitled to the presumption of truth afforded to well-pled facts. ***See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).** Therefore, after excising the allegations not accepted as true, the Court must decide whether the remaining factual allegations plausibly suggest entitlement to relief. ***Id.*** In other words, the complaint must contain allegations plausibly suggesting -- not merely consistent with -- an entitlement to relief. ***Id., citing Twombly*, 550 U.S. at 557.** This determination is a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." ***McCauley*, 671 F.3d at 616, *citing Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009).**

Whereas Rule 12(b)(6) motions challenge the sufficiency of the complaint to state a claim upon which relief can be granted, Rule 12(f) authorizes a district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." ***Delta Consulting Group, Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1142 (7th Cir. 2009), *quoting* FED. R. CIV. P. 12(f).**[2] Bearing these standards in mind, the undersigned Judge turns to TCI's motion to dismiss.

**C. <u>Analysis</u>**

LCG's third-party complaint alleges the following. LCG contracted with Universal to transport 1,625 cartons of jeans from Laredo, Texas to Groveport, Ohio for LCG's customer, Eddie Bauer. Universal accepted the tender of jeans in Laredo, but Universal's tractor broke down in Illinois before reaching Ohio. Universal's tractor-trailer rig was taken to TCI's Mt. Vernon facility for repair. A TCI employee assured both the driver of the Universal tractor-trailer and a driver for Nieto (who moved the 1,625 cartons of jeans to TCI's facility) that the cargo would be safe if left at TCI's facility. The trailer containing the cargo was stolen from TCI's facility.

---

[2] Many cases discuss the fact that Rule 12(f) motions are generally disfavored and infrequently granted. For instance, in ***Waste Management Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001), *cert. denied*, 535 U.S. 904 (2002),** the court explained that Rule 12(f) motions are not favored: "'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.' 5A A. Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1380, 647 (2d ed.1990). Nevertheless, 'a defense that might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action can and should be deleted.'" ***See also In re Zarnel*, 619 F.3d 156, 161 (2nd Cir. 2010).** However, motions to strike are properly used to "remove unnecessary clutter" from the pleadings. ***See Heller Fin., Inc., v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989).**

LCG alleges (Count I) that TCI breached its duty as bailee of the cargo by failing to safely secure the cargo at TCI's premises. Additionally, LCG alleges (Count II) that it is "entitled to indemnification or contribution" from TCI for all losses, costs and damages that Zurich may be awarded against LCG.

In moving to dismiss or strike the indemnity claim/allegations from LCG's third-party complaint, TCI emphasizes that Count II does not allege any *contractual* relationship between TCI and LCG. Instead, the third-party complaint "merely suggests that TCI was actively negligent in allowing the theft of the trailer by not properly securing its lot while LCG was passive in parking the trailer in an allegedly secure lot" (Doc. 34, p. 2). The third-party complaint, argues TCI, does not allege any facts that could support a claim for indemnity, because Illinois no longer recognizes active-passive negligence as a basis for an indemnity claim.

The Illinois Joint Tortfeasor Contribution Act:

> enacted in 1979, provides for the statutory right of contribution in actions "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death." 740 ILCS 100/2(a) (West 2006). Specifically, the Contribution Act permits one tortfeasor "who has paid more than his pro rata share of the common liability" to recover "the amount paid by him in excess of his pro rata share." 740 ILCS 100/2(b) (West 2006).

***Johnson v. Johnson*, 898 N.E.2d 145, 172-73 (Ill. App. 2008).**

The purpose of the Contribution Act was "to balance the equities between all culpable parties while ensuring that plaintiffs do not receive double recovery." ***Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co., Ltd.*, 522 F.3d 776, 783 (7th Cir. 2008). *Accord Equistar Chemicals, L.P. v. BMW Constructors, Inc*, 817 N.E.2d 534, 538 (Ill. App. 2004)("The purpose of the Contribution Act (740 ILCS 100/0.01 *et seq.* (West 2002)) is relief, through a proper apportionment of fault, of a party who is obligated to pay more than his fair share of damages for an injury.").** Pertinent to the matter at hand, the Contribution Act eliminated

the doctrine of active-passive indemnity as a device to shift the entire cost of tortious conduct from one tortfeasor to another. ***Allison v. Shell Oil Co.*, 495 N.E.2d 496, 501 (Ill. 1986).**

Some background on Illinois tort law fleshes out this point. In 1981, the Illinois Supreme Court abolished the common law rule under which contributory negligence operated as a complete bar to a negligence suit. In ***Alvis v. Ribar*, 421 N.E.2d 886, 896-97 (Ill. 1981)**, the Illinois Supreme Court adopted the doctrine of comparative negligence, "which serves to reduce a plaintiff's damages by the percentage of fault attributed to her." ***Johnson*, 898 N.E.2d at 159.**[3] Before ***Alvis***, active-passive indemnity had been moored to the reasoning that less delinquent parties (*passively* negligent tortfeasors) could transfer the full cost of their liability to those more delinquent (*actively* negligent tortfeasors), even where there existed no prior relationship supporting a duty to indemnify. ***Allison*, 495 N.E.2d at 500-01.** But post-***Alvis***, under a system of comparative negligence (at least in the context of joint tortfeasors), there was no need for implied indemnity based upon an active-passive distinction, because the law apportions fault among tortfeasors rather than affixing liability on any one tortfeasor. ***Id.***

Stated another way: "The Contribution Act established a statutory scheme whereby joint tortfeasors could obtain contribution amongst themselves, and, after *Alvis*, it was clear that the governing principle of comparative negligence - that the costs of accidental injury should be *apportioned* according to the relative fault of all concerned in the action - was not in harmony with active-passive indemnity which shifts *all* costs of liability to only one of two or more parties

[3] "Illinois was for most of the 1980s a pure comparative negligence jurisdiction, *see Alvis v. Ribar*, but in 1987 adopted a modified form of comparative negligence which provide[d] that tort plaintiffs cannot recover damages 'if the trier of fact finds that the contributory fault on the part of the plaintiff is more than 50% of the proximate cause of the injury or damage for which recovery is sought.'" ***Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388, 1401-02 (7th Cir. 1991), *cert. denied*, 504 U.S. 957 (1992).**

actually at fault." ***Diamond v. General Telephone Co. of Illinois,*** **569 N.E.2d 1263, 1267 (Ill App. 1991).**

> In *Alvis* … the court determined that total justice can only be attained where the law "apportions damages according to the relative fault of the parties." Active-passive indemnity, like contributory negligence, perpetuates inequality by its inability to apportion loss and its refusal to grant any relief whatsoever to a party whose conduct is considered "active" regardless of how much or little other tortfeasors are at fault…. Because active-passive indemnity is contributory negligence …, it perpetuates a theory of fault repudiated in *Alvis:* that one party was ultimately responsible for any injury, and that courts were charged with employing legal doctrine in a game of pin the tail on the donkey.… **Having adopted comparative negligence** and the principles of apportioning rather than affixing liability, not only in *Alvis*, but also in *Skinner* and by the Contribution Act, **the need for implied indemnity based upon an active-passive distinction has also evaporated.**

***Allison*, 495 N.E.2d at 500-01 (emphasis added).**

So, Illinois law no longer recognizes an indemnity claim based on the distinction between the active and passive negligence of multiple tortfeasors. This supports TCI's argument that Count II of LCG's third-party complaint (as drafted) fails to state a claim upon which relief can be granted. It bears notes that certain claims for implied indemnity survive in Illinois. For instance, implied indemnity remains viable in the quasi-contractual (as opposed to tort) context, when the indemnitee's liability is purely derivative. ***See, e.g., Kerschner v. Weiss & Co.*, 667 N.E.2d 1351, 1357 (Ill. App. 1996)("The Contribution Act did not abolish all forms of common law implied indemnity, but only that premised on apportionment of common liability based on relative fault…. Implied indemnity predicated upon quasi-contractual principles remains effective in cases where … the indemnitee's liability is solely derivative."); *American Nat. Bank and Trust Co. v. Columbus-Cuneo- Cabrini Medical Center,* 609 N.E.2d 285, 289 (Ill. 1992)(holding that "common law implied indemnity was**

**not abolished by the Contribution Act in quasi-contractual relationships involving vicarious liability.”).**

Clearly, though, LCG has not pled any contractual agreement or relationship between TCI and LCG or other facts stating a facially plausible claim for indemnity as currently presented in Count II of the third-party complaint (as well as paragraph 13, paragraph 17, and the prayer for relief). Perhaps, despite the label on Count II and some of the wording of the third-party complaint, LCG intends to state a negligence claim against TCI or some other cause of action in Count II. The Court cannot discern that from the record now before it. Rule 12(f) striking is not appropriate in this case; the references to indemnity are not redundant, immaterial, impertinent, or scandalous. The most prudent course of action is to dismiss the entire third-party complaint and allow LCG an opportunity to amend it.

**D. Conclusion**

For the reasons explained above, the Court **GRANTS IN PART AND DENIES IN PART** TCI’s motion (Doc. 33). The motion is granted in that the Court concludes that Count II of LCG’s third-party complaint, as drafted, fails to state a claim upon which relief can be granted. The motion is denied in that (a) the Court will not strike the pleading, and (b) the Court will dismiss with leave to amend the pleading. **On or before March 22, 2013**, LCG shall file its Amended Third-Party Complaint (or, if appropriate now that TCI has become a directly named co-Defendant of LCG, cross-claim) against TCI.

IT IS SO ORDERED.

DATED February 24, 2013.

**s/ *Michael J. Reagan***
Michael J. Reagan
United States District Judge