IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ZURICH AMERICAN INS. CO., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| LCG LOGISTICS, LLC, | ) |
| UNIVERSAL CARRIERS, INC., | ) |
| SILVIA CEJA (d/b/a Nieto's Transport), | ) |
| and TRUCK CENTERS, INC., | ) |
| | ) |
| Defendants. | ) |

---

| | | |
|---|---|---|
| LCG LOGISTICS, LLC, | ) | |
| | ) | |
| Crossclaim Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Case No. 12-cv-0635-MJR-PMF** |
| | ) | |
| UNIVERSAL CARRIERS, INC., and | ) | |
| SILVIA CEJA (d/b/a Nieto's Transport), | ) | |
| | ) | |
| Crossclaim Defendants. | ) | |

---

| | |
|---|---|
| LCG LOGISTICS, LLC, | ) |
| | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| TRUCK CENTERS, INC., | ) |
| | ) |
| Third-Party Defendant. | ) |

<u>MEMORANDUM AND ORDER</u>

REAGAN, District Judge:

A.  INTRODUCTION AND PROCEDURAL HISTORY

This case involves a shipment of Eddie Bauer blue jeans which went missing in Southern Illinois, en route from Texas to Ohio. Zurich American Insurance Company sues as the subrogated insurer of Eddie Bauer's successor, Everest Holdings, LLC. Zurich's December 2012 amended complaint names four Defendants: (1) LCG Logistics, LLC (LCG), (2) Universal Carriers, Inc. (Universal), (3) Silvia Ceja, d/b/a Nieto's Transport (Nieto), and (4) Truck Centers, Incorporated (TCI). Zurich alleges that LCG, Universal, and Nieto were interstate motor carriers or freight forwarders, within the scope of the Carmack Amendment.[1] This Court enjoys subject matter jurisdiction under 28 U.S.C. 1337 (based on the Carmack Amendment claims) and 28 U.S.C. 1367 (as to the related common law claims). *See, e.g., Indemnity Ins. Co. of North America v. Hanjin Shipping Co.*, 348 F.3d 628, 632 (7th Cir. 2003).

The amended complaint alleges as follows. LCG, a freight broker, contracted with Eddie Bauer to transport 1652 cartons of blue jeans from Laredo, Texas to Groveport, Ohio. The contract required LCG to maintain cargo liability insurance and provided that LCG would be liable for the full actual loss resulting from any damage,

---

[1] The Carmack Amendment, **49 U.S.C. 14706**, "created a nationally uniform rule of carrier liability concerning interstate shipments." *REI Transport, Inc. v. C.H. Robinson Worldwide, Inc.*, **519 F.3d 693, 697 (7th Cir. 2008)**, *quoting North Am. Van Lines v. Pinkerton Sec. Sys., Inc.*, **89 F.3d 452, 454 (7th Cir. 1996)**. Under the Carmack Amendment, a carrier of an interstate shipment is liable to "the person entitled to recover under the receipt or bill of lading," plain and simple. The person entitled to recover can sue either the delivering carrier or the originating carrier for the actual loss or injury to the property caused by *any* carrier in the course of the interstate shipment, and the carriers can "accurately gauge, and thus insure against, any liability" they may face in agreeing to carry something. *REI*, **519 F.3d at 697**, *citing* **49 U.S.C. 14706(a)(1).**

injury, or delay in the shipment. Without Eddie Bauer's knowledge, LCG hired Universal to take the shipment from Texas to Eddie Bauer's Ohio facility. Universal received the shipment in good condition in Texas (*see* bill of lading, Exhibit C to amended complaint at Doc. 40). LCG and/or Universal failed to deliver the shipment to Eddie Bauer in Ohio.

The complaint further alleges that while hauling the shipment, the tractor (being driven by Universal) broke down in Southern Illinois. The "tractor unit was transported to TCI … in Mt. Vernon" for repair (Doc. 40, p. 5). "On information and belief," Nieto took control of the container of jeans and transported it to the TCI facility, without Eddie Bauer's knowledge or consent (*Id.*, p. 6). While the container was at a TCI lot (sometime between July 14 – 19, 2011), it was removed or stolen. Eddie Bauer incurred roughly $260,000 in damages from LCG, Universal and Nieto's failure to deliver the shipment. LCG, Universal and Nieto refused demands to pay this amount to Eddie Bauer. Ultimately, Zurich paid this amount to Eddie Bauer's successor (Everest) under an insurance policy. Zurich seeks to recover that amount in this action.

**Zurich's amended complaint** contains claims for breach of contract against LCG (Counts I and II), breach of obligations under the Carmack Amendment by LCG, Universal and Nieto (Counts III, IV and V), and breach of bailment by Nieto and TCI (Counts VI and VII). **LCG filed a crossclaim** against Universal and Nieto. The amended crossclaim (Doc. 41) alleges that Universal and Nieto failed to deliver the shipment as required by a separate agreement, entitling LCG to roughly $260,000 or indemnification if LCG is found liable to Eddie Bauer for the value of the lost shipment.

**LCG also filed a third-party complaint** against TCI which, as amended March 11, 2013 (Doc. 54), asserts bailment and negligence/contribution claims (i.e., to the extent LCG is found liable to Zurich, TCI is liable to LCG for contribution).

Jury trial is set before the undersigned District Judge on September 30, 2013, with a final pretrial conference September 20, 2013.  To date, no one has appeared, answered, or otherwise responded on behalf of Universal or Nieto.  Five months ago, LCG secured a clerk's entry of default, pursuant to Federal Rule of Civil Procedure 55(a), against Universal and Nieto on its crossclaims against those two parties (*see* Docs. 51-53).[2]

The discovery and dispositive motion deadlines have elapsed (see Doc. 20).  One motion is pending – TCI moves for summary judgment on both counts of the third-party complaint LCG filed plus Count VI of Zurich's amended complaint (Doc. 59, with supporting briefs at Docs. 60 and 65).  LCG and Zurich filed memoranda opposing TCI's motion (Docs. 63 and 64).  For the reasons stated below, the Court will grant TCI's motion.  Analysis begins with the applicable legal standards.

### B. STANDARD GOVERNING SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Anderson v. Donahoe,* **699 F.3d 989, 994 (7th Cir. 2012),** *citing* FED. R. CIV. P. 56(a).

---

[2] The docket sheet does not reflect a Rule 55(a) motion for clerk's entry of default by Zurich on its claims against Universal and Nieto contained in the first amended complaint (Doc. 40).

A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Serednyj v. Beverly Healthcare, LLC,* **656 F.3d 540, 547 (7th Cir. 2011),** *citing Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 248 (1986).**

Summary judgment has been described as the "put up or shut up moment" in the case, at which "the non-moving party is required to marshal and present the court with the evidence she contends will prove her case," evidence on which a reasonable jury could rely. *Porter v. City of Chicago,* **700 F.3d 944, 956 (7th Cir. 2012),** *citing Goodman v National Sec. Agency, Inc.,* **621 F.3d 651, 654 (7th Cir. 2010).**

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the non-moving party. *Anderson,* **699 F.3d at 994;** *Righi v. SMC Corp.,* **632 F.3d 404, 408 (7th Cir. 2011);** *Delapaz v. Richardson,* **634 F.3d 895, 899 (7th Cir. 2011).** Before the nonmovant can benefit from this favorable view of the evidence, though, he must first actually place some evidence before the court. *Montgomery v. American Airlines, Inc.,* **626 F.3d 382, 389 (7th Cir. 2010).**

### C.  ANALYSIS OF TCI'S MOTION FOR SUMMARY JUDGMENT

TCI seeks summary judgment on LCG's and Zurich's bailment claims, plus LCG's contribution claim (labeled as a "negligence" claim in the amended third-party complaint, Doc. 54, p. 3). Illinois common law defines a bailment as "the delivery of goods for some purpose, upon a contract, express or implied, that after the purpose has been fulfilled they shall be redelivered to the bailor, or otherwise dealt with according

to his directions or kept [until] he reclaims them." *In re Midway Airlines, Inc.*, **383 F.3d 663, 671 (7th Cir. 2004),** *quoting Spirit of Excellence, Ltd. v. Intercargo Ins. Co.*, **777 N.E.2d 660, 670 n.1 (Ill. App. 2002).** To prevail on a bailment claim, the plaintiff must demonstrate each of the following: (1) an agreement to create a bailment, (2) the actual delivery or transfer of exclusive possession of the property of the bailor to the bailee; and (3) and acceptance of exclusive possession by the bailee. *Midway*, **383 F.3d at 671;** *Accord Spirit,* **777 N.E.2d at 670, n.1,** *citing Kirby v. Chicago City Bank& Trust Co.*, **403 N.E.2d 720, 723 (Ill. App. 1980).**

In *Indemnity Ins. Co. of North America v. Hanjin Shipping Co.,* **348 F.3d 628, 637 (7th Cir. 2003),** the Seventh Circuit (applying Illinois law) articulated the necessary elements of a prima facie case for bailment as: (1) an express or implied agreement to create a bailment, (2) delivery of the property in good condition, (3) acceptance of the property by the bailee, and (4) the bailee's failure to return the property (or the return of the property in damaged condition). Once the plaintiff has made this showing, "there is a presumption of bailee negligence that may be rebutted if the defendant-bailee presents 'sufficient evidence to support a finding that the presumed fact did not exist and that the defendant was free from fault.'" *Indemnity,* **348 F.3d at 637-38.**

Turning to the case at bar, TCI contends that neither LCG nor Zurich has shown that a bailment existed, and LCG has no proof that TCI was negligent (Doc. 59, p. 2). TCI says neither LCG nor Zurich can establish the first, second, or third requirements of a bailment. TCI tenders an affidavit from Julie Klebba, the general manager of TCI's

Mt. Vernon facility (Doc. 60-1). Ms. Klebba attests to the following facts, *inter alia* (*id.*, emphasis added):

→   On July 14, 2011, a 2005 Freightliner Conventional was towed to TCI's Mt. Vernon facility due to a breakdown. **"The tractor was not connected to a trailer."** The tractor was owned by Universal Carrier.

→   TCI mechanics determined that the tractor needed a new or rebuilt differential. Melissa Gomez of Universal was notified of the need for the repairs, and she authorized the repairs.

→   **TCI employees were not informed that a trailer being pulled by Universal was going to be brought to the Mt. Vernon TCI facility.** TCI employees are trained to inform truck drivers that TCI takes no responsibility for any trailers parked on the lot while tractors are serviced. Additionally, at the relevant time, TCI's service desk had a large sign that cautioned drivers coming for repair work that TCI was not responsible for items stolen from customer's vehicles.

→   On July 19, 2011, the driver of the Universal tractor reported that a trailer had been stolen from the TCI lot, and the police were called in to investigate. **This was the first notice that TCI had that the Universal driver had brought a trailer on to TCI's property.**

LCG urges the Court to completely disregard the Klebba Affidavit, because it does not contain evidence which would be admissible at trial. More specifically, LCG asserts that Ms. Klebba failed to aver that she had *personal knowledge* of the facts and policies delineated in the affidavit, that the affidavit contains inadmissible hearsay, and that the affidavit was not notarized or made under penalty of perjury.

The Federal Rules of Civil Procedure governing summary judgment were revised and reorganized in 2010. Rule 56(c)(4) no longer requires a formal affidavit to be submitted, ***Jajeh v. County of Cook,* 678 F.3d 560, 567-68 (7th Cir. 2012),** but it does require that any affidavit or declaration offered in support of summary judgment "be

made on personal knowledge, [and] set out facts that would be admissible in evidence." **Fed. R. Civ. P. 56(c)(4).** *See also Johnson v. Holder,* **700 F.3d 979, 982 (7th Cir. 2012) (noting that** *Luster v. Illinois Dept. of Corrections,* **652 F.3d 726 (7th Cir. 2011), held that evidence offered to support or oppose summary judgment must be admissible at trial, and affidavits or declarations must be made with personal knowledge).** The Court agrees that the Klebba Affidavit falls short of Rule 56(c)(4)'s requirements. The inquiry does not end there, however, because LCG misconstrues *its* burden on the pending motion.

As explained above, Rule 56 imposes an initial burden of production on the movant for summary judgment – he must demonstrate that a trial is not needed. *Celotex Corp. v. Catrett,* **477 U.S. 317, 323 (1986).** The Court of Appeals for the Seventh Circuit has emphasized that, in the typical situation -- such as the case at bar -- where the movant does not bear the burden of persuasion at trial, the requirements Rule 56 imposes on the movant are not onerous. Rule 56 "does not require the moving party to 'support its motion with affidavits or other similar materials *negating* the opponent's claim.'" *Modrowski v. Pigatto,* 712 F.3d 1166, 1168 (7th Cir. 2013)(emph. in original).

> Rather, the movant's initial burden "may be discharged by 'showing' – that is point[ing] out to the district court – that there is an absence of evidence to support the nonmoving party's case."

> Upon such a showing, the nonmovant must then "make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322. The nonmovant need not depose her own witnesses or produce evidence in a form that would be admissible at trial, but she must "go beyond the pleadings" … to demonstrate that there is evidence "upon which a reasonable jury could properly proceed to find a verdict" in her favor."

*Id.*, **712 F.3d at 1168-1169.** *See also Cincinnati life Ins. Co. v. Beyrer,* **-- F.3d --, 2013 WL 3379344 (7th Cir. July 8, 2013),** *citing Gordon v. FedEx Freight, Inc.,* **674 F.3d 769, 733 (7th Cir. 2012)("To survive a motion for summary judgment, 'the nonmoving party must establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor.'");** *Marcatante v. City of Chicago,* **657 F.3d 433, 439-40 (7th Cir. 2011) (Once the nonmovant challenges the factual support and legal soundness of the plaintiffs' claims, the plaintiffs acquire the burden of making a sufficient showing of evidence for each element of their case that they bear the burden of proving at trial.).**

In an unreported decision three months ago, the Seventh Circuit similarly rejected an argument made by a party appealing from the district court's grant of summary judgment who faulted the district judge for granting summary judgment when the movant did not support its motion with evidence:

> This argument reflects a misunderstanding of the burden on the moving parties at that stage of the proceedings. Federal Rule of Civil Procedure 56 "does not require the moving party 'to support its motion with affidavits or other similar materials negating the opponent's claim.'"… To meet their initial burden, it was enough for [movants] to assert that [plaintiff] lacked evidence substantiating [his claim]…. Once they pointed out this perceived gap in his case, [plaintiff] was obliged to provide evidence demonstrating that a jury reasonably could find in his favor.

*Linne v. Adams,* **2013 WL 1890646 (7th Cir. May 7, 2013)(unreported).**

Here, TCI does not have to support its summary judgment motion with *any* affidavits or evidence to negate LCG's or Zurich's claims. TCI's initial burden may be discharged by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. TCI has done so, obligating LCG (and Zurich) to

make a showing sufficient to establish the essential elements of their claims. *Modrowski,* **712 F.3d at 322.** Neither LCG nor Zurich has met this burden.

In response to TCI's summary judgment motion (which focuses on the lack of a bailment agreement with TCI), LCG asserts that it has standing to sue as a third party beneficiary of the bailment between TCI and Universal. LCG (apparently conceding the absence of an express agreement) also reminds the Court that a bailment may be created by implied agreement. And LCG reiterates that a presumption of negligence arises on proof of delivery of property in good condition, shifting the burden to the bailee to show it exercised due care (Doc. 63, pp. 7-10). These arguments are non-starters.

LCG sues TCI for breaching a duty to securely hold the trailer/shipment, but LCG offers no evidence of any contract or agreement by which TCI agreed to take control of or keep the trailer containing the shipment. No *express agreement* has been identified, and no *implied agreement* has been shown. It is true that, in determining whether an implied bailment exists, the court "may consider, inter alia, 'the circumstances surrounding the transaction, such as the benefits to be received by the parties, their intentions, … and the opportunities of each to exercise control over the property.'" *Fuller's Car Wash, Inc. v. Liberty Mut. Ins. Co.,* **698 N.E.2d 237, 242 (Ill. App. 1998),** *quoting Wall v. Airport Parking Co.,* **244 N.E.2d 190 (Ill. 1969).** But LCG has not offered any evidence (or even argument) on these factors – e.g., what were the circumstances surrounding the alleged transaction with TCI, and what benefits would TCI enjoy by keeping the trailer on its self-serve lot while the Universal tractor was being repaired in the TCI shop?

And LCG's reliance on the presumption of bailee negligence (Doc. 63, p. 5-7) is misplaced. That presumption is only triggered after the plaintiff has made a prima facie case of a bailment. *Indemnity*, **348 F.3d at 637.** LCG has not offered evidence to establish the necessary elements of that prima facie case.

As to the trailer containing the jeans, there is no proof whatsoever of an **agreement** by or with TCI (express or implied) to create a bailment. Nor has LCG shown **actual delivery** of the container of cargo to TCI, although this element of the case presents a closer call. LCG submits a report from Mt. Vernon, Illinois police and a letter from Silvia Ceja to LCG's counsel as evidence of delivery. These materials do not identify *TCI* as the place where Universal's trailer was dropped.

They indicate that a tow-truck was called to haul the broken tractor to the repair shop, while a friend of the Universal driver ("Jose" who worked for Nieto and happened to be driving along behind the Universal driver, Armando, when the unit broke down) hooked up the trailer (Doc. 63-1, p. 5), took it "to a freightline in Mount Vernon, IL" (Doc. 63-2, p. 2), and parked it at "the freightliner" (*id.*, p. 3). There are several "Freightliner" businesses in the Mt. Vernon area, and nothing identifies TCI's lot as the one in question, but a broken seal was found several days later on the TCI lot where the Nieto driver parked the trailer. If these facts and reasonable inferences (generously construed) establish delivery, LCG has not shown a bailment, because there is no proof of **acceptance** by TCI.

Assuming, arguendo, that LCG has demonstrated actual delivery or transfer of the shipment of jeans from the alleged bailor (Universal) to the alleged bailee (TCI),

LCG has not shown acceptance of exclusive possession of the property by the bailee (TCI). *See Midway*, **383 F.3d at 671**. *See also* ***Wright v. Autohaus Fortense, Inc.*, 472 N.E.2d 593, 595 (Ill. App. 1984) ("Among the necessary elements to prove a bailment are … and (3) acceptance of exclusive possession by the bailee.")**. This necessary element is utterly missing here. LCG alleges that Nieto's driver (Jose) moved the trailer to TCI's lot, and Universal's driver (Armando) returned to find the shipment of jeans missing, with a broken seal lying nearby (Doc. 54, pp. 2-3). But the record is devoid of evidence that TCI accepted exclusive possession of the trailer from anyone.

As stated above, summary judgment is the moment in the case at which the non-moving party is required to marshal and present to the court the evidence he contends will prove his case, evidence on which a reasonable jury could rely. ***Porter*, 700 F.3d at 956**. Neither LCG nor Zurich has sustained its burden in response to TCI's motion for summary judgment. Neither LCG nor Zurich has made a prima facie case of bailment as to TCI. "To recover under a bailment theory, a plaintiff must establish (1) an express or implied agreement to create a bailment; (2) a delivery of the property in good condition; (3) the bailee's acceptance of the property; and (4) the bailee's failure to return the property or the bailee's redelivery of the property in a damaged condition." ***Wausau Ins. Co. v. All Chicagoland Moving and Storage Co.*, 777 N.E.2d 1062, 1068 (Ill. App. 2002)**.

There is no evidence of an express or implied agreement (by or with TCI) to create a bailment for the *trailer*. Assuming that the Universal trailer was delivered in good condition by Nieto to TCI, there is no evidence at all of TCI's acceptance of

exclusive possession. Indeed, neither LCG nor Zurich has offered evidence that any TCI employee was informed that a trailer of cargo being hauled by Universal was going to be (or had been) parked at the TCI lot. And the record suggests the TCI lot where the trailer allegedly was dropped by Nieto was more akin to the self-park lot in *Wall* than the type of facility which would support the inference of "acceptance of exclusive possession by the bailee." *Midway*, **383 F.3d at 671.**[3]

Simply put, as to the bailment claims against TCI, the record does not contain evidence on which a "reasonable jury could return a verdict in favor of the nonmoving part[ies]." *Harper v. C.R. England, Inc.,* **687 F.3d 297, 306 (7th Cir. 2012).** The same holds true as to LCG's negligence claim against TCI (Count II of the amended third-party complaint, Doc. 54). This claim rests on the theory that TCI's negligence in securing the container with the shipment of jeans renders TCI liable to LCG for contribution as a joint tortfeasor.

The Illinois Joint Tortfeasor Contribution Act, **740 ILCS 100/1,** *et seq.*, provides a remedy for a person who has paid more than his pro rata share of a common liability by allowing him to seek contribution from a fellow joint tortfeasor. *Ponto v. Levan,* **972 N.E.2d 772, 784 (Ill. App. 2012).** The Contribution Act provides that where two or more persons "are subject to liability in tort arising out of the same injury to person or

---

[3] In *Wall,* **244 N.E.2d at 193,** the Illinois Supreme Court distinguished the situation in which a vehicle owner delivers his car to a parking lot attendant and leaves the keys from the situation in which the owner parks his own car on a lot and keeps the keys. A bailment typically arises in the former circumstance but not the latter. *Id.* **("We are of the opinion that use of self-service parking lots … does not create a bailor-bailee relationship, and the lot operator is not subject to the liability imposed by the rules relating to bailments.").**

property, or the same wrongful death, there is a right of contribution among them…." **740 ILCS 100/2(a).**

LCG failed to make a prima facie case of bailment (thus no breach of bailment by TCI). That is the only negligence/tort alleged or identified in the third-party complaint against TCI. And in response to summary judgment, LCG has not offered any evidence as to another basis for contributory negligence by TCI – i.e., if no bailment has been shown, under what legal theory did TCI owe LCG a duty to secure the Universal trailer which Nieto placed on the parking lot? To prevail on a negligence claim under Illinois law, the plaintiff must prove a duty owed by the defendant to the plaintiff, a breach of that duty, and injury proximately caused to the plaintiff by the breach. *See, e.g., Wilkins v. Williams,* -- N.E.2d --, **2013 WL 3086915 (Ill. June 20, 2013);** *Ward v. Kmart Corp.,* **554 N.E.2d 223, 226 (Ill. 1990).** LCG has failed to shoulder its burden of proving a prima facie case of bailment or any other negligence claim or basis for tort liability against TCI. So the contribution claim against TCI fails.

### D. CONCLUSION

Summary judgment is the "'put up or shut up' time when a party 'must show what evidence it has that would convince a trier of fact to accept its version of events.'" *On-Site Screening, Inc. v. U.S.,* **687 F.3d 896, 899 (7th Cir. 2012),** *quoting Johnson v. Cambridge Industries, Inc.,* **325 F.3d 892, 901 (7th Cir.),** *cert. denied,* **540 U.S. 1004 (2003).** LCG has not shown what evidence it has that would convince a trier of fact as to the bailment and contribution claims.

Zurich (who also asserts a bailment claim against TCI) candidly acknowledges that its "cause of action is dependent on whether LCG proves its allegations of bailment against TCI" (Doc. 64, p. 3). LCG's bailment claim against TCI does not survive summary judgment. Nor does Zurich's dependent claim.

Furthermore, LCG has not shown any negligence by TCI. In response to summary judgment, LCG has not marshaled and presented this Court with the evidence LCG contends will prove its negligence claim against TCI. ***Goodman*, 621 F.3d at 654.**

As to the <u>bailment claims</u> (brought by Zurich and LCG against TCI) and the <u>negligence claim</u> (brought by LCG against TCI), the record reveals no genuine issue of material fact, and TCI is entitled to judgment as a matter of law. Thus, the Court **GRANTS** TCI's motion for summary judgment (Doc. 59) in its entirety.

The claims on which summary judgment is hereby granted are Count VII of Zurich's first amended complaint (Doc. 40) and Counts I and II of LCG's first amended third-party complaint (Doc. 54). No claims remain against TCI, so the Clerk's Office shall "terminate" TCI as a party on the docket sheet. At the conclusion of the case, the Clerk's Office shall enter judgment **in favor of TCI and against Zurich** (on the main complaint) and i**n favor of TCI and against LCG** (on the third-party complaint).

The dispositive motion deadline has elapsed, and this case is set for jury trial on September 30, 2013 with a final pretrial conference on September 20, 2013. In the wake of this Order, what remains are (a) Zurich's claims against LCG, Universal and Nieto plus (b) LCG's crossclaim against Universal and Nieto. Given the fact that trial is fast-

approaching, the Court is concerned that the claims against Universal and Nieto are stalled. Neither Universal nor Nieto responded to Zurich's amended complaint or LCG's crossclaims (service of the former is unclear, service of the latter was made – see clerk's entry of default at Doc. 53, following Order of Judge Frazier at Doc. 52).

Accordingly, the Court **SETS an August 15, 2013 DEADLINE** by which Zurich (on its amended complaint) and LCG (on its crossclaim) shall take action as to Universal and Nieto – voluntarily dismiss the claims against them, move for clerk's entry of default or default judgment (as appropriate, under Rule 55), or file a Memorandum showing why the claims against Universal and Nieto should not be **dismissed for want of prosecution.**

Finally, the undersigned District Judge **DIRECTS** counsel for Zurich and LCG (the parties "in" the case, now that the claims against TCI are gone) to consider contacting Magistrate Judge Frazier's chambers regarding a settlement conference – an opportunity they waived previously, when the conference was set in April 2013. A settlement conference may merit rescheduling at this juncture, with all dispositive motions resolved, discovery/motion deadlines elapsed, and trial eight weeks away.

IT IS SO ORDERED.

DATED July 23, 2013.

                                        s/ *Michael J. Reagan*
                                        Michael J. Reagan
                                        United States District Judge